UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMOUD ABDULAH HAMOUD ) | |
| HASSAN AL WADY ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 08-CV-01237 (RMU)(AK) |
| ) | |
| BARACK OBAMA, *et al.* ) | |
| ) | |
| Respondents. ) | |
| _____) | |

**MEMORANDUM OPINION**[1]

Pending before the Court is Petitioner Al Wady's Renewed Motion for Direct Contact with Client [87] ("Pet'r Mot."), the Respondents' Opposition [92] ("Resp'ts Opp'n"), Petitioner's Reply [95] ("Pet'r Reply"), Respondents' Supplemental Filing ("Resp'ts Supp.") [108] and Petitioner's Response ("Pet.r Resp.") [109].

In their motion, counsel for Petitioner claim that Respondents ("Government") refuse to permit them *direct* contact with Petitioner to ascertain in a face to face meeting whether Petitioner's decision not to meet with counsel is knowing and voluntary, and made with a full understanding of who counsel is and how counsel think they can assist Petitioner. Counsel assert that an accommodation made by the Government as a result of a prior mediation, which allowed counsel to attempt to meet with Petitioner only if Petitioner agreed to leave his cell, was tried and failed. Therefore, Petitioner's counsel ask this Court to order that counsel be permitted direct

---

[1] United States District Judge Ricardo M. Urbina referred the instant Motion to the undersigned Magistrate Judge for resolution, pursuant to Local Civil Rule 72.2(a). (*See* Referral Order [88].)

contact with Petitioner, either via a cell-side visit or by requiring that Petitioner be brought to a hearing or interview room, so that counsel may ascertain in a face to face meeting whether Petitioner does or does not want counsel's assistance in the prosecution of his *habeas* petition. The Government opposes the motion and insists that the relief sought by Petitioner's counsel would result in an extraordinary intervention into the operation of Guantanamo Bay because the type of access sought is prohibited under standard operating procedures in place.  In the alternative, the Government moves to dismiss the habeas action for lack of client authorization. Upon consideration of the filings submitted by the parties, and following a telephone conference with counsel for Petitioner and Respondents, the Court finds that the terms of the Protective Order necessitate that Petitioner's counsel be allowed to meet with their client in order to determine whether Petitioner's purported refusal to meet or work with counsel is a voluntary, knowing, and informed decision.  Respondents are therefore ordered to comply with the Protective Order and facilitate counsel and an interpreter to meet directly with Al Wady in a hearing room.

## Factual and Procedural Background

At their core, the issues presented to this Court are about the right of detainees at Guantanamo to have access to counsel if they so choose and the Court ensuring that a detainee's decision to refuse the assistance of counsel is voluntary and informed.  On July 17, 2008, a *habeas* petition was filed under the name of Hamoud Abdullah Hamoud Hassan Al Wady, and

counsel was appointed on that petition on August 8, 2008.[2]

During the week of December 1, 2008, counsel for Petitioner traveled to Guantanamo Bay to meet with Petitioner pursuant to the Protective Order in place for Guantanamo Bay Litigation.[3] Counsel were initially informed that Petitioner refused to meet with them, and were permitted to write a note that was taken back to Petitioner by guard personnel. (Pet'r Mot. at 4.) The guard personnel returned shortly thereafter and stated that Petitioner refused to read the note and would not let the guards read it to him. (*Id.*) Counsel for Petitioner requested to either send back a second note, or to meet cell-side with Petitioner, but these requests were denied by the guard personnel. (*Id.* at 4-5.)

Petitioner's counsel subsequently filed a Motion for Direct Contact with Client, which was referred to the undersigned, and a telephonic mediation conference took place on January 2, 2009. Following the mediation, an agreement was reached by the parties such that Petitioner's counsel withdrew their motion without prejudice and the Government permitted counsel to meet with Petitioner in the particular camp in which he is detained if he agreed to meet with them. The parties further agreed that if Petitioner declined to meet with counsel but agreed to leave his cell and go to an interview room, an interpreter would be allowed to speak to Petitioner to try and change his mind. (*See id.* at 5.) Counsel traveled to Guantanamo Bay the week of January 19, but Petitioner again declined to meet with counsel. (*Id.*) On February 24, 2009, the parties jointly moved to stay all proceedings in this case until Monday, April 27, 2009 to allow counsel a

---

[2] Counsel for Petitioner assert that a *habeas* petition was filed under the name of Houmad Warzly, who is believed to be the same person as the instant Petitioner, but that no counsel was appointed on that petition. (Pet'r Mot. at 3, n.5.) That prior petition has since been dismissed without prejudice. (*Id.*)

[3] The current Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba was entered by Judge Thomas F. Hogan on September 11, 2008.

third attempt to obtain authorization.  (Resp'ts Opp'n at 2-3.)  The trial court granted that motion February 25, 2009.

## Analysis

I.  *Counsel Access to Detainees Under the Protective Order to Ascertain Whether A Detainee Voluntarily and Knowingly Rejects Legal Assistance*

The Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order") govern the procedures by which counsel for Guantanamo detainees may meet and communicate with their clients.  "[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 427 F.3d 1226, 1234 (D.C. Cir. Feb. 10, 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of the underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same), *cert. denied, American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991).  It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control.

The Protective Order governs in-person meetings with detainees, procedures for sending and receiving legal mail, handling of classified information and any other access and communications issues involving Guantanamo detainees who are seeking *habeas* relief in this

District Court. The requirements for in-person access to detainees by their counsel are laid out in Section II of the Protective Order. Under that section, *habeas* counsel must verify that they represent the detainee in question.[4] Protective Order § III.C. The Protective Order divides the verification process into two steps: 1) notification of representation[5] and 2) evidence of authority to represent the detainee. *Id.* As this Court has previously held, the Protective Order entitles counsel to two visits with a detainee plus ten days before they must submit evidence of their authority to represent the detainee in question. *See Adem v. Bush*, No. 05-723, (D.D.C. March 14, 2006.) In the instant case, counsel for Petitioner have not been able to visit with the detainee even once because of his refusal to read or listen to notes from counsel passed to him by guard personnel.

The Court initially notes that Respondents do not oppose a face to face meeting between Petitioner and his designated counsel. Respondents argue that it is Mr. Al Wady who has refused to meet with his designated counsel, and that guard personnel will not force a detainee to meet with counsel.[6] Thus, the purpose of the instant motion is to direct Respondents to facilitate a face to face meeting between the Petitioner and his designated counsel accompanied by an

---

[4] In addition to providing DoD with verification of representation, Counsel must also hold a valid security clearance at the Secret level or higher, *see* Protective Order § III.C, and must sign an affirmation acknowledging that they agree to "fully comply with the[] procedures" in the Protective Order, *id.*

[5] The Notification of Representation must include "counsel's licensing information, business and email addresses and phone numbers, as well as the name of the detainee being represented." *Id.* § III.C.

[6] In their Supplemental Filing, Respondents contend that to effectuate a court order to facilitate a face to face meeting between Petitioner and counsel the guard personnel would "be required to execute a Forced Cell Extraction." (Resp'ts Supp. at 3.) The Court is not convinced that a such a technique is necessarily required in this case to permit a face to face meeting between Petitioner and his designated counsel in a hearing room. For example, as Petitioner's counsel suggest, the Petitioner could be shown a court order stating that the he is to be brought to a hearing room because the court needs to know that he is voluntarily refusing to meet with counsel. (*See* Pet'r Resp.) In any event, Petitioner's counsel have requested that this Court order that if Petitioner will not come to the hearing room under court order that he be permitted to remain in his cell without the use of a forced cell extraction. (*Id.*)

interpreter at his cell or a hearing room, notwithstanding Petitioner's prior refusal to meet with them.

The Court concludes that the trial court faced with a motion by Respondents to dismiss a *habeas* petition for failure to obtain client authorization to be represented cannot proceed without some direct assurance that the detainee's decision to reject the assistance of counsel and not pursue the *habeas* petition is voluntary and fully informed.  The decision to decline legal representation and potentially abandon a *habeas* petition could have an adverse impact on his status, and the Court must confirm that such decision is freely and knowingly made.  The Protective Order permits multiple counsel visits before a client authorization is required and recognizes that counsel may not initially be in the position to present evidence of their authority to represent the detainee, and further directs counsel for both detainees and the Respondents to cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.  These provisions recognize the logistical difficulties of counsel attempting to meet with Guantanamo detainees, most of whom do not speak English and may have reason to distrust American visitors.  *See Adem*, No. 05-723, at 25-26.  Because of this potential distrust, it is vital that counsel who are not affiliated with the military or Government be permitted to speak to Petitioner in person to explain their role and the procedures available to him, so that they may ascertain whether his refusal of legal services is voluntary and well-informed.  Furthermore, it is to the trial court's benefit that a non-governmental attorney provide confirmation beyond the assurances of guard personnel that a detainee's decision to refuse legal assistance and abandon a *habeas* petition filed on his behalf is voluntary and fully informed.

While the Court recognizes the respondents' concerns about requiring a face to face

meeting between counsel and Petitioner, this potential temporary inconvenience must be weighed against the trial court's need for assurance that the detainee's decision to abandon his habeas petition and refuse the assistance of counsel is knowingly and voluntarily made before it considers and rules upon the Respondents' motion to dismiss the petition.  Respondents are therefore ordered to permit and facilitate Al Wady's counsel to meet with him in person in a hearing room for the purpose of explaining their role as counsel and his rights as a *habeas* petitioner, so that the Court may ascertain whether his refusal of counsel is knowing and voluntary.


Dated: May 1st, 2009                               _____/s/_____
                                                                          ALAN KAY
                                                                          UNITED STATES MAGISTRATE JUDGE